UNITED STATES DISTRICT OF NEW YORK
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | | |
|---|---|---|
| CLECIO LIRA and HILTON DIONET | : | |
| RODRIGUEZ, individually and on behalf of others | : | |
| similarly situated, | : | 14-cv-2356 (KBF) |
| Plaintiffs, | : | |
| -against- | : | |
| | : | |
| EAGLE OPEN KITCHEN, LLC, ROBERT BERK, | : | |
| DEREK DANTON, and OSCAR PENALOZA | : | |
| | : | |
| Defendants. | : | |
| | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION
TO PLAINTIFFS' MOTION FOR CONDITIONAL CLASS CERTIFICATION**


Dated:  New York, New York
        June 30, 2014

*Of Counsel*:

        Peter A. Walker
        Lori M. Meyers
        Pinchos N. Goldberg

                        SEYFARTH SHAW LLP
                        620 Eighth Avenue
                        New York, New York 10018-1405
                        (212) 218-5500

                        *Attorneys for Defendants*

## <u>TABLE OF CONTENTS</u>

**Page**

I. PRELIMINARY STATEMENT .................................................................................. 1

II. FACTUAL BACKGROUND ................................................................................... 3

    A. Eagle NYC ..................................................................................................... 3

    B. Plaintiffs Lira and Rodriguez ...................................................................... 4

III. ARGUMENT ......................................................................................................... 4

    A. Applicable Standard ..................................................................................... 4

    B. Plaintiffs' Self-Serving Affidavits Contradict Each Other and are Based on Hearsay and Supposition ............................................................................. 6

    C. Plaintiffs Do Not Meet the Legal or Factual Standards for Conditional Certification ................................................................................................... 7

        1.    Plaintiffs Fail To Present Sufficient Evidence Of A Common Policy ................................................................................................ 7

        2.    Plaintiffs Fail To Demonstrate That The Eagle NYC Had a Common Unlawful Policy ............................................................... 9

        3.    Plaintiffs Fail to Establish That They Are Similarly Situated To Either Bar Backs or Bartenders Which They Seek to Represent ............. 10

    D. Plaintiffs' Request For Equitable Tolling Of The Statute Of Limitations Should Be Denied ...................................................................................................... 15

    E. Plaintiffs' Proposed Statute of Limitations and Their Notice Of The Lawsuit Are Overbroad And Should Be Rejected ..................................................... 17

        1.    Plaintiffs' Request For A Six Year Notice Period Should Be Denied ........................................................................................... 17

        2.    Plaintiffs' Request To Post The Notice Of Lawsuit At Eagle Bar Should Be Denied .................................................................... 18

        3.    The Notice Of Lawsuit Should Include Contact Information For Defendants' Counsel ................................................................... 18

        4.    The Notice Of Lawsuit Should Inform Potential Plaintiffs That They May Be Asked To Participate In Discovery And Trial .................. 19

i

IV. CONCLUSION.................................................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Aponte v. Comprehensive Health Mgmt., Inc.*,
   No. 10-CV-4825, 2011 WL 2207586 (S.D.N.Y. June 2, 2011) .............................................18

*Bah v. Shoe Mania, Inc.*,
   No. 08-CV-9380, 2009 WL 1357223 (S.D.N.Y. May 13, 2009) ...........................................19

*Boutros v. JTC Painting and Decorating Corp.*,
   12 Civ. 7576, 2013 WL 3110943 (S.D.N.Y. June 19, 2013)...................................................14

*Colon v. Major Perrv St. Corp.*,
   No. 12 Civ. 3788, 2013 WL 3328223 (S.D.N.Y. July 2, 2013) .......................................16, 17

*Fraticelli v. MSG Holdings, L.P.*,
   13 Civ. 6518, 2014 WL 1807105 (S.D.N.Y. May 7, 2014)......................................................7

*Hamadou v. Hess Corp.*,
   915 F. Supp. 2d 651 (S.D.N.Y. 2013).................................................................................17

*Hoffmann v. Sbarro, Inc.*,
   982 F. Supp. 249 (S.D.N.Y. 1997) ...................................................................................5, 10

*Ikikhueme v. Culinart, Inc.*,
   13 Civ. 293, 2013 WL 2395020 (S.D.N.Y. June 3, 2013)........................................................7

*Jenkins v. TJX Cos.*,
   853 F. Supp. 2d 317 (E.D.N.Y. 2012) ...................................................................................5

*Khan v. Airport Mgmt. Servs., LLC*,
   No. 10-CV-7735, 2011 U.S. Dist. LEXIS 133134 (S.D.N.Y. Nov. 16, 2011).........................5

*Kim Man Fan v. Ping's on Mott, Inc.*,
   No. 13- CV-4939, 2014 WL 1512034 (S.D.N.Y. April 14, 2014) .........................................16

*Levinson v. Primedia Inc.*,
   No. 02-CV-2222, 2003 U.S. Dist. LEXIS 20010 (S.D.N.Y. Nov. 6, 2003)...........................10

*Lloyd v. J.P. Morgan Chase & Co.*,
   Nos. 11-Civ-9305, 12-CV-2197, 2013 WL 4828588 (S.D.N.Y. Sept. 9, 2013)....................16

*Mazur v. Olek Lejbzon & Co.*,
   No. 05-CV-2194, 2005 U.S. Dist. LEXIS 30321 (S.D.N.Y. Nov. 30, 2005)..........................13

*McGlone v. Contract Callers, Inc.*,
    867 F. Supp. 2d 438 (S.D.N.Y. 2012).....................................................................................16

*Mendoza v. Ashiya Sushi 5, Inc.*,
    12 Civ. 8629, 2013 WL 5211839 (S.D.N.Y. Sept. 16, 2013)..............................13, 16, 18, 19

*Myers v. Hertz Corp.*,
    624 F.3d 537 (2d Cir. 2010)..........................................................................................5, 10

*Pippins v. KPMG LLP*,
    No. 11-CV-0377, 2012 WL 19379 (S.D.N.Y. Jan. 3, 2012) ...................................................18

*Raniere v. Citigroup Inc.*,
    827 F. Supp. 2d 294 (S.D.N.Y. 2011)........................................................................................5

*Romero v. Flaum Appetizing Corp.*,
    No. 07-CV-7222, 2009 WL 2591608 (S.D.N.Y. Aug. 17, 2009)..........................................19

*Romero v. H.B. Auto. Group, Inc.*,
    No. 11-CV-386, 2012 U.S. Dist. LEXIS 61151 (S.D.N.Y. May 1, 2012) ...............................5

*Romero v. La Revise Assocs., L.L.C.*,
    968 F. Supp. 2d 639 (S.D.N.Y. 2013)......................................................................................17

*Sanchez v. El Rancho Sports Bar Corp.*,
    13 Civ. 5119, 2014 WL 1998236 (S.D.N.Y. May 13, 2014)................................13, 15, 16, 17

*Sanchez v JMP Ventures, LLC*,
    No. 13 CV 7264 (KBF), 2014 WL 465542 (S.D.N.Y. Jan. 27, 2014)......................................5

*Shajan v. Barolo, Ltd.*,
    No. 10-CV-1385, 2010 WL 2218095 (S.D.N.Y. June 2, 2010) ........................................18, 19

*Thompson v. World Alliance Fin. Corp.*,
    No. 08-CV-4951, 2010 WL 3394188 (E.D.N.Y. Aug. 20, 2010) ..........................................18

*Ting Yao Lin v. Hayashi Ya II, Inc.*,
    2009 WL 289653 (S.D.N.Y. Jan. 30, 2009) ..........................................................................14

*Trinidad v. Pret A Manger (USA) Ltd.*,
    962 F. Supp. 2d 545 (S.D.N.Y. 2013).....................................................................................17

*Yahraes v. Restaurant Assocs. Events Corp.*,
    No. 10-CV-935, 2011 WL 844963 (E.D.N.Y. Mar. 8, 2011)................................................16

*Zerilli–Edelglass v. N.Y. City Transit Auth.*,
    333 F.3d 74 (2d Cir. 2003)......................................................................................................15

**STATUTES**

29 U.S.C. § 203(m) ........................................................................................................1

29 U.S.C. § 216(b) ...............................................................................................1, 5, 10

29 U.S.C. § 256(b) ......................................................................................................15

29 U.S.C.A. § 206 .........................................................................................................2

Fair Labor Standards Act ("FLSA") ..............................................1, 2, 3, 4, 15, 17, 18

NY Labor Law § 215(2)(a) .........................................................................................14

NY Labor Law § 652(1) ...............................................................................................2

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23 ........................................................................................................15

Defendants Eagle Open Kitchen, LLC ("Eagle NYC"), Robert Berk ("Berk"), Derek Danton ("Danton") and Oscar Penaloza ("Penaloza") (collectively, "Defendants"), respectfully submit this response in opposition to Plaintiffs' motion for conditional class certification pursuant to § 216(b) of the Fair Labor Standards Act ("FLSA").

## I. PRELIMINARY STATEMENT

Plaintiffs Clecio Lira ("Lira") and Hilton Dionet Rodriguez ("Rodriguez") (together, the "Named Plaintiffs"), two former bartenders of the Eagle NYC, each with a grudge against their former employer, seek conditional class certification under the FLSA of a class of current and former bartenders and bar backs who have worked for Eagle NYC in the past six years. Although their Amended Complaint seeks to represent all of Eagle NYC's current and former employees, they have now limited their request for conditional certification to bartenders and bar backs only.

Even as limited, however, the Named Plaintiffs' motion should be denied because there was no common policy applicable to bartenders and bar backs that violated the law and indeed, the central claim of the case -- that Eagle NYC did not pay the minimum wage -- is demonstrably false. Plaintiffs Lira and Rodriguez earned wages of at least $15.70 per hour and $20.40 per hour, respectively.

Putting that aside, bartenders and bar backs perform different functions and are paid under different compensation policies. Bartenders are paid the New York State tipped minimum wage of five dollars ($5.00) per hour and receive many hundreds of dollars each week in tips -- assuring that in each week they earned far more than the federal minimum wage (and for that matter, New York State's higher minimum wage). This arrangement complies with the FLSA. 29 U.S.C. § 203(m).

Bar backs are paid differently; they receive at least the regular New York State minimum wage by payroll check, and also receive tips from a tip pool from the bartenders.  Since the New York State minimum wage is higher than the federal minimum wage, bar backs earn well more than the federal minimum wage and both of these pay systems comply with the FLSA.  *Compare* 29 U.S.C.A. § 206 ($7.25 minimum hourly wage as of July 24, 2009) *with* NY Labor Law § 652(1) ($7.15 minimum hourly wage from January 1, 2007 through December 30, 2013; $8.00 minimum hourly wage as of December 31, 2013).

In support of their motion, the Named Plaintiffs' supply only their own unsupported declarations, which mirror their Amended Complaint, and are flatly contradicted by documentary evidence in the form of their own paychecks, their own IRS Form W-2's and the Eagle NYC's payroll records from Paychex, its payroll vendor.  Their conclusory statements are also inconsistent with each other, contrary to the nine declarations supplied by Defendants, seven of which are from putative class members to whom the Named Plaintiffs claim to have spoken. Tellingly, the very employees who worked alongside the Named Plaintiffs deny that they were subjected to the nonexistent policies which Plaintiffs manufacture out of whole cloth and even deny that any such conversations about compensation ever occurred.  Furthermore, the circumstances under which Plaintiffs ended their employment (especially Lira) demonstrates that they cannot fairly and adequately represent the interests of putative class members.

Most significantly, there is no class representative for the bar backs during the relevant class period, whether it is three years as provided for in the FLSA, or, as Plaintiffs assert, six years, since neither Named Plaintiff served in that capacity during any relevant class period. Thus, the Named Plaintiffs are not similarly situated to putative class members for this reason alone.

2

Should the Court conditionally certify any class here, which it should not, at a minimum it should remove bar backs from the purported class.  The Court should also revise Plaintiffs' notice, which is both overly broad as well as incomplete and should be rejected, because, among other reasons: (i) the requested six-year notice period is inappropriate as the instant motion for conditional certification only pertains to the Named Plaintiffs' purported FLSA claims, which, at most, have a three year statute of limitations; (ii) it does not include contact information for Defendants' counsel; (iii) it purports to apply to all employees even though Plaintiffs' motion addresses only bartenders and bar backs; and (iv) it fails to inform putative plaintiffs of their obligation to participate in discovery or at trial should they join the action.

Finally, Plaintiffs, who claim to have spoken to other class members, have provided no justification for their request to equitably toll the statute of limitations while their motion is pending and their request should be rejected.

## II.  FACTUAL BACKGROUND

### A.  Eagle NYC

The Eagle NYC is a domestic limited liability company which is located at 554 West 28th Street, New York, New York.  (Amended Complaint ("AC") ¶ 3.)  Berk, a member of the LLC, is responsible for (i) setting the policies at the Eagle NYC, (ii) employee hiring, firing and discipline, and (iii) payroll.  (Declaration of Robert Berk ("Berk Dec.") ¶ 3.)  Oscar Penaloza ("Penaloza") is the manager of the Eagle NYC.  (Declaration of Oscar Penaloza ("Penaloza Dec.") ¶ 2.)  Penaloza opens and closes the bar each day that he works and makes recommendations as to hiring, firing and discipline, which are sometimes, but not always followed.  (Berk Dec. ¶¶ 7-8; Penaloza Dec. ¶¶ 2, 7.)

The Eagle NYC is generally open from 10:00 p.m. until 4:00 a.m. on weekdays and Saturdays.  (Berk Dec. ¶ 4; Penaloza Dec. ¶ 5.)  The bar is open from 4:00 p.m. to  4:00 a.m. on

Sundays; there are several shifts on Sundays given the length of time that the bar is open that day.  (Berk Dec. ¶ 5; Penaloza Dec. ¶ 6.)  During the three year FLSA class period, Eagle NYC employed twelve (12) current or former bartenders and five (5) current or former bar backs, including the two Named Plaintiffs.  (Berk Dec. ¶ 2.)

**B.  Plaintiffs Lira and Rodriguez**

Both Plaintiffs were bartenders for the Eagle NYC for approximately ten years. (Declaration of Clecio Lira ("Lira Dec.") ¶ 4; Declaration of Hilton Dionet Rodriguez ("Rodriguez Dec.") ¶ 2.)  As bartenders, the Named Plaintiffs claim that they were responsible for general cleaning, serving drinks, maintaining the liquor, balancing and closing the cash registers and other similar tasks.  (Lira Dec. ¶ 3; Rodriguez Dec. ¶ 14.)  Plaintiff Lira returned to the Eagle NYC as a bartender in 2006, having left there in 2004.  (Lira Dec. ¶ 4.)  Plaintiff Lira generally worked four days per week.  (Lira Dec. ¶ 5.)

Plaintiff Rodriguez was hired as a bartender in 2003 to work weekends.  He worked Saturday and Sunday until 2012, when he voluntarily reduced his schedule to only one day per week.  (Rodriguez Dec. ¶ 5; Berk Dec. ¶ 34.)  When the rooftop bar closed at the end of the summer, Rodriguez, who was only working one day per week, was laid off subject to recall. (Berk Dec. ¶ 35 ; Penaloza Dec. ¶ 27.)  Shortly after his layoff, Berk asked Rodriguez to return to work and Rodriguez refused.  (Berk Dec. ¶ 36.)  In or around May 2014, just prior to the roof bar being opened, Berk contacted Rodriguez and asked him to return to work on Saturday evenings.  Rodriguez also declined that offer.  (Berk Dec. ¶ 37.)

### III.  ARGUMENT

**A.  Applicable Standard**

Conditional certification of a collective action is not the rubber stamp that Plaintiffs suggest.  Rather, before subjecting an employer to the significant and costly burdens of a

collective action, even at the preliminary notice stage, Plaintiffs must demonstrate that they and the putative plaintiffs they seek to represent "together were victims of a common policy or plan that violated the law." *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010) (citing *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997).  To satisfy this standard, Plaintiffs must, at a minimum, make specific factual allegations, supported by affidavits or other evidence, sufficient to establish that the putative class members are similarly situated and desire to participate in the lawsuit.  29 U.S.C. § 216(b).  While Plaintiffs' burden of proof is modest, "it is not non-existent - 'certification is not automatic.'"  *Romero v. H.B. Auto. Group, Inc.*, No. 11-CV-386, 2012 U.S. Dist. LEXIS 61151, at *27  (S.D.N.Y. May 1, 2012) (citing *Raniere v. Citigroup Inc.*, 827 F. Supp. 2d 294, 320 (S.D.N.Y.  2011); *Khan v. Airport Mgmt. Servs., LLC*, No. 10-CV-7735, 2011 U.S. Dist. LEXIS 133134, at *5 (S.D.N.Y. Nov. 16, 2011) (same); *see also Jenkins v. TJX Cos.,* 853 F. Supp. 2d 317, 322  (E.D.N.Y.  2012) (even at the preliminary stage, the Court must find "some identifiable factual nexus which binds the named plaintiffs and potential class members together as victims" of a particular practice) (internal citations omitted).

In fact, where the named plaintiffs' evidence and claims are as flimsy as here, this Court has denied conditional certification.  In *Sanchez v JMP Ventures, LLC,* No. 13 CV 7264 (KBF), 2014 WL 465542,  at *1-2 (S.D.N.Y. Jan. 27, 2014), for example, the named plaintiff's only support for his motion was his own declaration, which was nothing more than a repeat of the allegations of the complaint.  Here, the declarations provided by the two Named Plaintiffs, both employees with an axe to grind against the Eagle NYC, are conclusory, and flatly contradicted by the documentary evidence and by the declarations of seven potential class members with whom the Named Plaintiffs claim to have spoken, each denying any such conversations.[1]  In

---

[1]     Indeed, it is difficult to understand how the Named Plaintiffs could be similarly situated to these seven employees since they all deny the Named Plaintiffs' claims.

sum, the Named Plaintiffs cannot identify any uniform policy that makes them similarly situated to other bartenders or bar backs.

**B.  Plaintiffs' Self-Serving Affidavits Contradict Each Other and are Based on Hearsay and Supposition**

The sole evidence provided by the Named Plaintiffs in support of their application for conditional class certification -- the Affidavits of Lira and Rodriguez -- are self-serving, contradictory and not worthy of credence.

For example, Lira claims that he worked at the bar Thursdays through Saturdays from 9:00 p.m. to 5:00 a.m. (Lira Dec. ¶ 5).  Rodriquez, however, who overlapped with Lira on Saturdays, worked different hours, from 9:00 p.m. to 5:30 a.m. (Rodriquez Dec. ¶ 3).  Also, while Lira claimed that he never received any wages from the Eagle NYC (Lira Dec. ¶ 6), Rodriquez claimed that he rarely received any wages from the bar.  (Rodriguez Dec. ¶ 8.)  So too, while Lira asserts that tips would be distributed to bartenders and bar backs (Lira Dec. ¶ 8), Rodriguez claims that distribution was based on a point system, which he does not explain, most likely since none existed at the Eagle NYC.  (Rodriguez ¶ 9.)

Further, Rodriguez claims that he knows the hours for bartenders on Saturdays and Sundays, because he would personally see precisely when bartenders arrived and left work. (Rodriguez Dec. ¶ 6.)  By his own admission, however, he worked at the bar on Sundays from 4:00 p.m. to 11:00 p.m. (Rodriguez Dec. ¶ 3), but the bar was open until 4:00 a.m., so how could he have seen when other bartenders left the premises?  Likewise, a year prior to his layoff, he only worked on Saturdays and could not possibly know when bartenders arrived or departed on Sundays or any other day on which he did not work.

Both Named Plaintiffs aver that "to [their] knowledge" Defendants did not have any system in place that kept track of hours nor did they keep track of tips.  (Rodriguez Dec. ¶¶ 7, 10;

Lira ¶ 9.)  Lira claims that "we noticed that even bartenders who worked the same shift as me received paystubs showing that they worked a different number of hours than I did."  (Lira ¶ 10.) But he does not identify to whom the "we" refers, how he knew such information, to whom he spoke, which bartenders, which shifts, or during what time frame.  He also claims to have been aware of bar back compensation because he was a bar back in 2002 for few months.  (Lira ¶ 10.) However, his experience 12 years ago, even if credible, has nothing to do with current pay practices and is not within the statute of limitations of this action.

Further, Lira claims to have handed bar backs their pay of $50.00 in cash (Lira ¶ 11), implying, but carefully not actually asserting falsely, that this was their only pay from Eagle NYC for the evening.  Affidavits based on such nebulous statements and half-truths are insufficient to support conditional class certification.  *Fraticelli v. MSG Holdings, L.P.*, 13 Civ. 6518, 2014 WL 1807105,  at *3 (S.D.N.Y. May 7, 2014) ("I know that MSG treated other interns in a manner similar to me based on observations as well as discussions we often had among ourselves," insufficient for conditional class certification); *Ikikhueme v. Culinart, Inc.*, 13 Civ. 293, 2013 WL 2395020, at *2 (S.D.N.Y. June 3, 2013) (conditional class certification denied where the only affidavits filed were from Plaintiff and are based on his "understanding.").

**C.  Plaintiffs Do Not Meet the Legal or Factual Standards for Conditional Certification**

**1.   Plaintiffs Fail To Present Sufficient Evidence Of A Common Policy**

The Named Plaintiffs make the following disingenuous claims:  that the Eagle NYC systematically paid their bartenders and bar backs less than the minimum wage for all hours that they worked; the Eagle NYC paid bartenders $5.00 per hour -- the tipped minimum wage in New York without telling them that they would be paid at this rate, and also paid bar backs $50.00 per shift, even when the shifts lasted eight hours or more.  (Lira Dec. ¶¶ 6, 10, 11; Rodriguez Dec. ¶¶ 8, 13.)

Notably, the Named Plaintiffs do not state that they did not receive tips in addition to their tipped wage, or that between their hourly rate and tips, their compensation was far more than minimum wage. Rather, recognizing that the tipped minimum wage is appropriate for bartenders, they claim instead that they were never told that they would be paid the tipped minimum wage and that the manager of the bar, Oscar Penaloza, regularly took tips from the tip pool. Again, they carefully do not state that Penaloza participated in the pool on his own behalf, they only intimate as much. In this regard, Lira averred that "Penaloza would frequently take money from the tip pool even though he was a manager" and Rodriquez attested that "Defendant Oscar Penaloza, who managed the bar, would also frequently take tips from the tip pool." (Lira Dec. ¶ 8; Rodriguez Dec. ¶ 9.)

In point of fact, Penaloza did not participate in the tip pool, even when he worked behind the bar, filling in for bartenders on break, or helping when the bar was busy. (Berk Dec. ¶ 20; Penaloza Dec. ¶ 14; Declaration of Leo Lopez ("Lopez Dec.") ¶ 15; Declaration of John O'Connor ("O'Connor Dec.") ¶ 17; Declaration of John Mirch ("Mirch Dec.") ¶ 15; Declaration of Richard Smith ("Smith Dec.") ¶ 19; Declaration of Juan Carlos Dolores ("Dolores Dec.") ¶ 12; Declaration of Robert DeBellis ("DeBellis Dec.") ¶ 15; Declaration of Graham MacDonald ("MacDonald Dec.") ¶ 15.) He merely handed tips from the pool to the bar backs, who collectively were paid fifteen percent (15%) of the evenings' tips, before the remainder of the tips were distributed among the bartenders. (Penaloza Dec. ¶ 15; MacDonald Dec. ¶¶ 13-14; DeBellis Dec. ¶¶ 16-17; Lopez Dec. ¶ 14; O'Connor Dec. ¶¶ 15-16; Mirch Dec. ¶ 15; Smith Dec. ¶¶ 17-18.) Even Lira admitted that Penaloza provided tips from the tip pool to the bartenders and bar backs. (Lira Dec. ¶ 8.)

The Named Plaintiffs' claims that they were not told they that the Eagle NYC was taking a tip credit is disingenuous at best. Each and every paycheck which the Named Plaintiffs'

received, identified their tipped minimum wage and the tips that were declared on their behalf for that pay period.  Thus, not only were they advised of this compensation system when they were hired and regularly throughout their tenure, but they were reminded of this system every two weeks when they received their paychecks.  It strains credulity that Lira and Rodriguez would work for more than ten years at the Eagle NYC and not have a clue as to how they were paid.  If Lira believed he was being paid less than minimum wage, why would he have returned to the Eagle NYC in 2006 after he left in 2004, given that there is no dearth of bartending jobs in New York City?  If Rodriguez believed he was earning less than minimum wage, why would he have continued to work at the bar one day per week after he relocated his home to an area two hours outside of New York City?

### 2. Plaintiffs Fail To Demonstrate That The Eagle NYC Had a Common Unlawful Policy

The Named Plaintiffs own paystubs, IRS W-2 Forms and payroll registers demonstrate that they were being paid significantly above the minimum wage.  As noted above, Plaintiffs were paid at the lawful tipped rate of $5.00 per hour, received cash tips ranging from $800.00 to more than $1,700.00 which were declared on behalf of Lira for his four weekly shifts and that cash tips ranging from $155.00 (one weekly shift) to $800.00 every two weeks were declared on behalf of Rodriguez.  (Berk Dec. Exs. B, E.)[2]

According to documentation submitted by the Eagle NYC to tax authorities, between 2011 and 2013, Lira earned the least amount of money in 2011.  His IRS Form W-2 reveals that he earned $28,673.80 that year.  If Lira worked all four shifts which he claims to have worked and worked the longer hours on Sunday which he stated that he worked only during the warm

---

[2]        These amounts are cash tips that were declared by the Eagle NYC and recorded on various payroll documents.  We expect discovery to show that there were additional tips which the Named Plaintiffs did not declare and which would make their wages even higher.

months (35 hours) (Lira Dec. ¶5), his hourly rate was $15.70 -- more than double the minimum wage.  (Berk Dec. Ex. C.)  Turning to Rodriguez, he earned the least amount of money in 2013 when he worked only one Saturday shift per week.  His 2013 IRS Form W-2 reveals that he earned $9,047.00 for his one shift per week, which he claims was 8.5 hours.  (Rodriguez Dec. ¶ 3.)  Again assuming that he worked every week, his hourly wage was $20.40 -- more than double the minimum wage.  (Berk Dec. Ex. F.)  Simply put, even construing the facts most favorably to Plaintiffs, there was no violation of the FLSA's minimum wage requirements (or New York State's, for that matter).

Thus, Plaintiffs are not able to show that they or anyone else were victims of a common policy that violated the law, since the Eagle NYC did not violate the minimum wage law, the central and only federal claim in this case.  *See Myers*, 624 F.3d at 555; *Levinson v. Primedia Inc.*, No. 02-CV-2222, 2003 U.S. Dist. LEXIS 20010, at *5 (S.D.N.Y. Nov. 6, 2003) (denying conditional certification under § 216(b) where plaintiffs failed to make "factual showing" that defendants' compensation structure "violated the law"); *Hoffmann,* 982 F. Supp. at 261 (S.D.N.Y. 1997) ("The question . . . is not whether the Court has the power to authorize the notice, but whether the "appropriate" circumstances exist for the Court to exercise its discretion in this matter.").

### 3.  Plaintiffs Fail to Establish That They Are Similarly Situated To Either Bar Backs or Bartenders Which They Seek to Represent

Not only do Plaintiffs fail to demonstrate that the Eagle NYC engaged in a policy or practice of not paying minimum wage, they are not similarly situated to the bar backs, who are members of the class which they seek to represent.  Bar backs were and continue to be paid differently than bartenders, but like the bartenders are paid at least the minimum wage or more.

10

Bar backs receive at least minimum wage from the Eagle NYC.  (MacDonald Dec. ¶ 5, Ex. A; Dolores Dec. ¶ 4, Ex. A; DeBellis Dec. ¶ 5, Ex. A; Berk Dec. ¶ 21.)  In fact, in 2013, in their paychecks alone, bar backs received more than minimum wage.  (*Id*.)  Their paychecks revealed a regular rate of $7.50 an hour, not the 2013 minimum rate of $7.25 per hour.  (*Id*.)  In 2014, bar backs received $8.00 per hour which also met minimum wage requirements.  (DeBellis Dec. Ex. A.)  Having received a paycheck, it is clear that bar backs were not paid their wages in cash as claimed by the Named Plaintiffs, neither of whom was a bar back during the class period.  Also, unlike the bartenders, the Eagle NYC did not declare tips on behalf of the bar backs.  Rather, that was the responsibility of each bar back.

The bar backs also did not participate in the tip pool to the same extent as the bartenders.  After the evenings tips were collected and counted, fifteen percent (15%) of that figure was provided to the bar backs to split among themselves.  (*See e.g.* Mirch Dec. ¶ 15; DeBellis Dec. ¶¶ 4, 15; O'Connor Dec. ¶¶ 15-16; Smith Dec. ¶¶ 17-18; Dolores Dec. ¶ 11; MacDonald Dec. ¶¶ 4, 13; Lopez Dec. ¶ 14.)  Thus, it is clear that like the bartenders, the bar backs made far more than minimum wage.[3]

Nor are the Named Plaintiffs similarly situated to the other bartenders.  The Named Plaintiffs claim that they were never told that they were being paid the tipped minimum wage or that the Eagle NYC was taking a tip credit as permitted by law.  (Lira Dec. ¶ 12; Rodriguez Dec. ¶ 10.)  Each and every bartender hired by the Eagle meets with Berk, who explains the payroll

---

[3]     The duties of the bar backs and bartenders also differ.  Bar backs perform the tasks that the bartenders do not perform.  They cut up the fruit garnishes, clean the bar, clean the glasses, provide all stations with ice, recycle the bottles, empty the trash and restock the beers in the bar.  (DeBellis Dec. ¶ 2; MacDonald Dec. ¶ 2; Dolores Dec. ¶ 2.)  They do these things differently for each bartender, based on the latter's individual preferences.  Bartenders, on the other, according to Lira and Rodriguez, serve drinks, maintain the liquor and balance and close the cash registers, among other similar tasks.  (Lira Dec. ¶ 3; Rodriguez ¶ 14.)

structure and the tip credit.  (Berk Dec. ¶ 16; Lopez Dec. ¶¶ 2-3; O'Connor Dec. ¶¶ 2-3; Mirch

Dec. ¶¶ 2-4; Smith Dec. ¶¶ 2-3.)  As noted above, each payroll stub refers to the hourly rate, plus

the cash tips earned during that period and the IRS Form W-2s received by each bartender

likewise identifies the tipped wages declared on their behalf.  (Berk Dec. Ex. A.)  It is

inconceivable that Berk would explain this to every other bartender, but not to the Named

Plaintiffs.

      The Named Plaintiffs assert that they never received any money, other than tips from the

Eagle NYC.  (Lira Dec. ¶ 6; Rodriguez Dec. ¶ 8.)  Not only is this contrary to the experience of

the other bartenders employed by Eagle (Berk ¶¶ 14-16; Lopez Dec. ¶¶ 2-3; O'Connor Dec. ¶¶ 2-

3; Mirch Dec. ¶¶ 2-4; Smith Dec. ¶¶ 2-3), this statement demonstrates the Named Plaintiffs'

convenient and intentional lack of understanding with respect to their own wages in order to

further this lawsuit.  The Eagle NYC paid bartenders at the New York State tipped minimum

wage which has been five dollars per hour for the past few years.  The bar also declares tips on

behalf of the bartenders.  Since the bartenders make far more in tips than in actual wages, taxes

and withholdings on their paycheck exceed the minimum tipped wage paid to them and they

receive a paycheck with a zero balance.  The money that they are paid by the Eagle NYC is for

their benefit and goes towards their FICA, Medicare and tax withholdings as is clear from each

pay stub they received.  (Berk Dec. Ex. A.)[4]

      The Named Plaintiffs also claim that they were never permitted any breaks while at work

(Lira Dec. ¶ 5; Rodriguez Dec. ¶ 3) and that the Eagle NYC did not display posters notifying

employees of their rights to minimum wages and overtime pay.  (Lira Dec. ¶ 13; Rodriguez Dec.

---

[4]     While not advocating that this issue warrants conditional certification, the Named
Plaintiffs also claim that their IRS Form W-2 never matched their wages and tips (Lira Dec. ¶ 7;
Rodriguez Dec. ¶ 11).  However, Exhibits B, C, E and F to the Berk Declaration reveal that this
also is simply untrue.

¶15). But every other employee who worked at the Eagle NYC asserted that they were never prevented from taking a break, that the breaks were paid  (Lopez Dec. ¶¶ 8-9; O'Connor Dec ¶ 9; Mirch Dec. ¶ 10; Smith Dec. ¶ 9; MacDonald Dec. ¶ 7; Dolores Dec. ¶ 8; DeBellis Dec. ¶ 9) and that the government posters were hung in the office where the bartenders congregated.  (Berk Dec. ¶ 23; Penaloza Dec. ¶ 16; Lopez Dec. ¶ 7; O'Connor Dec. ¶ 8; Smith Dec. ¶ 8; Mirch Dec. ¶ 9; DeBellis Dec. ¶ 11; MacDonald Dec. ¶ 9.)

If Lira and Rodriguez are to be believed, the fact that they were not given the same speech as given to the other bartenders about the tipped rate that they would be receiving and the tips that the bar declared on their behalf, that they alone were not allowed to take a break and that the government posters were not posted on Eagle NYC's premises, reveal that there was no common policy on any of these issues and, therefore, a collective action is not the superior method of litigating Plaintiffs' claims.  In any event, as demonstrated, conditional certification is not granted on such a shaky foundation and Plaintiffs' mere allegations of potentially similarly situated individuals are not enough. [5]

---

[5] The cases cited by Plaintiffs in support of their similarly situated argument are inapposite.  For example, in *Mazur v. Olek Lejbzon &Co.*, No. 05-CV-2194, 2005 U.S. Dist. LEXIS 30321 (S.D.N.Y. Nov. 30, 2005), the court relied on the declarants' identifying by name numerous other employees with whom they personally spoke and who indicated that they worked hours for which they were not paid.  Not so here.  Each Named Plaintiff alleges only that he spoke to other bartenders and that they were paid similarly -- *i.e.*, at the tipped rate of $5.00 per hour -- which is not unlawful.  (Lira Dec. ¶ 10; Rodriguez ¶ 12.)  Only Lira and Rodriguez claim to have worked hours for which they were not paid.  (Compare Lira Dec. ¶ 6 and Rodriguez Dec. ¶ 8 with Lopez Dec. ¶ 9; O'Connor Dec. ¶ 10; Mirch Dec. ¶ 11; Smith Dec. ¶ 7.)  And while they were paid at the tipped rate, each bartender denied having any discussions with the Named Plaintiffs on this issue.  (Lopez Dec. ¶ 13; O'Connor Dec. ¶ 13; Mirch Dec. ¶ 14; Smith Dec. ¶ 14.)  In *Mendoza v. Ashiya Sushi 5, Inc.,* 12 Civ. 8629, 2013 WL 5211839 (S.D.N.Y. Sept. 16, 2013), the Court recognized that the Plaintiff's declaration and the complaint, standing alone did not suffice to conditionally certify a class, but it chose to draw all reasonable inferences in Plaintiffs' favor. Here, no such inferences should be drawn.  In *Sanchez v. El Rancho Sports Bar Corp.,* 13 Civ. 5119, 2014 WL 1998236 (S.D.N.Y. May 13, 2014) the dancers and waitresses were not paid under different pay policies; rather they were paid under the same pay policy, but dancers did not work scheduled shifts and were not supervised.

Further, Plaintiffs are not similarly situated to the purported class in light of their retaliation claims, which are specific to themselves.  Plaintiff Lira claims he was retaliated against for asking to take a break (A.C. ¶¶ 63-68), whereas Plaintiff Rodriguez claims that he was retaliated against for complaining that his hours were not properly recorded on his paystub (A.C. ¶¶ 73-76).  Remarkably, Rodriguez does not even identify this complaint in his sworn declaration.  He states only that the hours on his paystubs infrequently matched the hours that he worked.  (Rodriguez Dec. ¶ 8.)

In light of these individual claims,  Plaintiffs may be more interested in their own retaliation claims, rather than in the wage claims on which they seek conditional class certification to the detriment of any class.  *See e.g. Boutros v. JTC Painting and Decorating Corp.*, 12 Civ. 7576, 2013 WL 3110943 (S.D.N.Y. June 19, 2013) (retaliation claims not appropriate for class certification).  Put another way, Plaintiffs' more valuable retaliation claims may swallow up the class wage claims due to the availability of reinstatement, back pay, front pay and compensatory damages for the retaliation claims.  *See* NY Labor Law § 215(2)(a) (setting forth available remedies for New York Labor Law retaliation).  *See also Ting Yao Lin v. Hayashi Ya II, Inc.,*, 2009 WL 289653, at *7-8 (S.D.N.Y. Jan. 30, 2009) (awarding punitive damages for retaliation in violation of § 215).  Thus, Named Plaintiffs retaliation claims, coupled with their hostility towards the Eagle NYC and to Defendant Penzaloza in particular, the fact that they were not similarly situated to the purported class that they seek to represent, the fact that various bartenders and bar backs question Plaintiff Lira's judgment and propensity for truthfulness, the fact that Plaintiff Rodriguez was offered an opportunity to return to work and refused it -- all demonstrate that they are not adequate class representatives who can fairly represent the class they seek to represent.  (Smith Dec. ¶¶ 11-13; Mirch Dec. ¶ 16; Lopez Dec. ¶ 11; DeBellis Dec. ¶ 19.)

Defendants anticipate that Plaintiffs will argue that the Court is not to undertake credibility evaluations at the notice stage. Here, however, the Court is faced with two cleverly drafted (but factually empty) declarations of former employees who left the Eagle NYC amidst acrimony and made allegations that are not only untrue, but are wholly contradicted by each and every individual they claim to have spoken to, the vast majority of whom would be included in this very small purported class. (Lopez Dec. ¶ 13; O'Connor Dec. ¶ 13; Mirch Dec. ¶ 14; Smith Dec. ¶ 14; DeBellis Dec. ¶¶ 13-14; Dolores Dec. ¶ 10; MacDonald Dec. ¶¶ 11-12.) Based on these facts, there is not sufficient evidence for the Court to make a meaningful decision that the potential members are similarly situated.[6]

## D.  Plaintiffs' Request For Equitable Tolling Of The Statute Of Limitations Should Be Denied

The Named Plaintiffs offer no justification whatsoever for departing from the requirements of 29 U.S.C. § 256(b), mandating that the statute of limitations for each opt-in plaintiff runs from when he or she files a written consent to join the lawsuit. *See Sanchez v. El Rancho Sports Bar Corp.*, No. 13-CV-5119, 2014 WL 1998236, at *6 (S.D.N.Y. May 13, 2014). Although courts sometimes toll the statute of limitations for potential opt-in plaintiffs while the motion for conditional certification is pending, the Second Circuit has held that "equitable tolling is only appropriate in [ ] rare and exceptional circumstance[s] in which a party is prevented in some extraordinary way from exercising his rights." *Zerilli–Edelglass v. N.Y. City Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003) (alterations in original) (citation and internal quotation marks omitted).

---

[6]     While Plaintiffs are now moving for conditional class certification under the FLSA, management of the FLSA claims are only the tip of the iceberg. Once Plaintiffs' New York claims for deductions, tip retention and spread of hours are added to the mix, a whole new layer of individualized analysis must be undertaken under Federal Rule of Civil Procedure 23, rendering class certification even more inappropriate.

Because Plaintiffs have not even attempted to articulate any extraordinary circumstances (or any facts whatsoever, for that matter) that would support their request to equitably toll the statute of limitations, their request should be denied.  *See e.g., Sanchez*, 2014 WL 1998236, at *6 (denying plaintiffs' request to toll the statute of limitations where they failed to articulate any extraordinary circumstances); *Kim Man Fan v. Ping's on Mott, Inc.*, No. 13- CV-4939, 2014 WL 1512034, at *3 (S.D.N.Y. April 14, 2014) (same); *Mendoza v. Ashiya Sushi 5, Inc.*, No. 12-CV-8629, 2013 WL 5211839, at *10 (S.D.N.Y. Sept. 16, 2013) (denying plaintiffs' request for equitable tolling); *Lloyd v. J.P. Morgan Chase & Co.*, Nos. 11-Civ-9305, 12-CV-2197, 2013 WL 4828588, at *6 (S.D.N.Y. Sept. 9, 2013) ("The Court declines to toll the statute of limitations and, accordingly, notice will be limited to individuals who were Financial Advisors within three years from the date the Court issues an order approving the proposed notice.")[7]  Indeed, the fact that the Named Plaintiffs' specifically allege that they already spoke with at least seven other potential class members about the facts at issue in this lawsuit (Lira Dec. ¶ 10; Rodriguez Dec. ¶ 12) (notwithstanding that each of these individuals denied that these conversations took place), further undermines any argument that extraordinary circumstances exist here (an argument that the Named Plaintiffs don't even attempt to make), especially in light of the small number of potential class members that would have to be notified here.

---

[7]     The cases cited by Plaintiffs in support of their argument for equitable tolling are inapposite.  In *Colon v. Major Perry St. Corp.*, No. 12 Civ. 3788 , 2013 WL 3328223 (S.D.N.Y. July 2, 2013), the court did not offer any reason as to why it granted the plaintiff's request for equitable tolling and it is not clear from the decision that the defendants even opposed this request.  In *McGlone v. Contract Callers, Inc.*, 867 F. Supp. 2d 438, 445 (S.D.N.Y. 2012), the Court focused on "the courts' heavy dockets and understandable delays in rulings," which is not an issue here given the short briefing schedule set forth in the Scheduling Order issued in this case.  In *Yahraes v. Restaurant Assocs. Events Corp.*, No. 10-CV-935, 2011 WL 844963 (E.D.N.Y. Mar. 8, 2011), the Court explained that it granted the plaintiff's request for equitable tolling because the defendants had engaged in dilatory litigation tactics, which has not occurred here.

**E. Plaintiffs' Proposed Statute of Limitations and Their Notice Of The Lawsuit Are Overbroad And Should Be Rejected**

    **1. Plaintiffs' Request For A Six Year Notice Period Should Be Denied**

Because the instant motion for conditional certification only pertains to Plaintiffs' purported FLSA claims, which, at most, have a three year statute of limitations, Plaintiffs should not be permitted to conduct a fishing expedition to uncover potential claims under New York State law (with its longer six-year statute of limitations) by invoking the federal FLSA collective action mechanism.

Although some courts in this Circuit have previously approved the six-year notice period requested by Plaintiffs, "[a] more recent trend, however, is to approve three-year notice periods…." *Sanchez*, 2014 WL 1998236, at *4  (approving three-year notice period). *See also Trinidad v. Pret A Manger (USA) Ltd.*, 962 F. Supp. 2d 545, 564 (S.D.N.Y. 2013) (approving a three-year notification window because "[t]he motion before the Court is only for collective certification of a FLSA opt-in class, and not class certification under Fed. R. Civ. P. 23 for claims under the NYLL"); *Romero v. La Revise Assocs., L.L.C.*, 968 F. Supp. 2d 639, 648-49 (S.D.N.Y. 2013) (three years); *Colon v. Major Perry St. Corp.*, No. 12 Civ. 3788, 2013 WL 3328223, at *7 (S.D.N.Y. July 2, 2013) (three years); *Hamadou v. Hess Corp.*, 915 F. Supp. 2d 651, 667-68 (S.D.N.Y. 2013) (three years).  As many courts have observed, a six-year notice period is inappropriate because it would be confusing to employees who are ineligible for the FLSA opt-in class to receive the opt-in notice, which does not relate to any state law claims, and because while a class for the state law claims may someday be certified, it is an opt-out, not an opt-in, class, so there is no danger of claim lapse.  *See, e.g.*, *Trinidad*, 962 F. Supp. 2d  at 564; *Hamadou*, 915 F. Supp. 2d at 668.  Thus, the notice period should be limited to three years.

### 2. Plaintiffs' Request To Post The Notice Of Lawsuit At Eagle Bar Should Be Denied

Plaintiffs' request to post the Notice of Lawsuit at the Eagle NYC should also be denied as it would create a disturbance at the bar.  When issuing notice of a collective action, the Court is required to ensure that potential opt-in plaintiffs receive notice of the lawsuit while also minimizing the disturbance to a defendant's business.  *See Thompson v. World Alliance Fin. Corp.*, No. 08-CV-4951, 2010 WL 3394188, at *8 (E.D.N.Y. Aug. 20, 2010).  While courts in this jurisdiction are split as to whether defendants should be required to post a notice at its workplace, recent decisions have agreed that posting notices is not necessary where the plaintiffs have not articulated any reason why notice by first class mail would be insufficient.  *See Pippins v. KPMG LLP*, No. 11-CV-0377, 2012 WL 19379, at *15 (S.D.N.Y. Jan. 3, 2012) ("Given the comprehensiveness of the personal information that KPMG is required to provide to Plaintiffs' counsel, there is no need for KPMG to post the notice in the workplace."); *Aponte v. Comprehensive Health Mgmt., Inc.*, No. 10-CV-4825, 2011 WL 2207586,   at *7 (S.D.N.Y. June 2, 2011) ("I find that First Class mail is [] sufficient to provide potential class members with notice in this case.  The notices need not additionally be posted in all the defendant's offices."); *Shajan v. Barolo, Ltd.*, No. 10-CV-1385, 2010 WL 2218095, at *2 (S.D.N.Y. June 2, 2010) ("Since all current employees will be receiving the notice, there is no need to require defendants to post the notice in the workplace.").  Accordingly, Defendants request that a notice, if any, be limited to delivery by first class mail.

### 3. The Notice Of Lawsuit Should Include Contact Information For Defendants' Counsel

FLSA notices routinely include contact information for the defendants' counsel and this information should be included here as well.  *See, e.g. Mendoza* , 2013 WL 5211839, at *7 ("Defendants request that the Final Notice include their counsel's contact information.  FLSA

notices routinely include this information. … Accordingly Defendants' request is granted …";
*Bah v. Shoe Mania, Inc.*, No. 08-CV-9380, 2009 WL 1357223, at *4 (S.D.N.Y. May 13, 2009)
("The notice must also include the contact information of counsel for Defendants as one source
from whom potential plaintiffs could obtain information.").

> ### 4. The Notice Of Lawsuit Should Inform Potential Plaintiffs That They May Be Asked To Participate In Discovery And Trial

Courts in this jurisdiction routinely require the notice to inform potential plaintiffs that
they may have to participate in discovery and at trial.  For example, in *Bah v. Shoe Mania, Inc.*,
the court ordered the plaintiff to amend the notice "to inform the potential plaintiffs that, if they
opt in, they *may* be asked to (1) appear for depositions; (2) respond to written discovery; (3)
testify at trial and/or (4) pay litigation costs."  *Id.*, at *4.  *See also Mendoza*, 2013 WL 5211839,
at *7 ("[W]here parties seek to add only a 'neutral and non-technical reference to discovery
obligations,' the advantages of providing notice regarding potential obligations outweigh the
possibility of dissuading potential plaintiffs."); *Shajan v. Barolo, Ltd.*, No. 10-CV-1385, 2010
WL 2218095, at *2 (S.D.N.Y. June 2, 2010) ("The Court finds that plaintiffs' proposed notice
should be modified to [inform] putative class members … that they may be required to
participate in the process known as pre-trial discovery, which may involve answering questions
under oath, orally or in writing; they may also be required to testify at trial."); *Romero v. Flaum
Appetizing Corp.*, No. 07-CV-7222, 2009 WL 2591608, at *6 (S.D.N.Y. Aug. 17, 2009) (adding
"(1) Language stating that opt-in plaintiffs *may* be called upon to provide deposition or trial
testimony under oath, respond to document requests, and/or respond to other requests for
information.").  Accordingly, this information should be included should notice issue here.  As a
convenience for the Court, Defendants attach to the Declaration of Peter A. Walker, a clean copy
of a revised Notice and a redline showing how it differs from the Named Plaintiffs' Notice.

## IV.  CONCLUSION

For all of the forgoing reasons, the Court should deny Plaintiffs' Motion for

Conditional Certification.

Dated: New York, New York        SEYFARTH SHAW LLP
       June 30, 2014


                                 By:   *s/Peter A. Walker*
                                     Peter A. Walker [pwalker@seyfarth.com]
                                     Lori M. Meyers [lmeyers@seyfarth.com]
                                     Pinchos N. Goldberg [pgoldberg@seyfarth.com]
                                 620 Eighth Avenue, 32nd Floor
                                 New York, New York  10018
                                 Phone:  (212) 218-5500
                                 Fax:  (212) 218-5526

                                 *Attorneys for Defendants*